AO 472  (Rev. 09/16)  Order of Detention Pending Trial

# UNITED STATES DISTRICT COURT
for the

Eastern District of Texas

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. 4:21-mj-33 |
| Troy Anthony Smocks | ) | |
| *Defendant* | ) | |

## ORDER OF DETENTION PENDING TRIAL

### Part I - Eligibility for Detention

Upon the

☒ Motion of the Government attorney pursuant to 18 U.S.C. § 3142(f)(1), or
☒ Motion of the Government or Court's own motion pursuant to 18 U.S.C. § 3142(f)(2),

the Court held a detention hearing and found that detention is warranted. This order sets forth the Court's findings of fact and conclusions of law, as required by 18 U.S.C. § 3142(i), in addition to any other findings made at the hearing.

### Part II - Findings of Fact and Law as to Presumptions under § 3142(e)

☐ **A. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(2)** *(previous violator)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because the following conditions have been met:

☐ **(1)** the defendant is charged with one of the following crimes described in 18 U.S.C. § 3142(f)(1):

☐ **(a)** a crime of violence, a violation of 18 U.S.C. § 1591, or an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; **or**

☐ **(b)** an offense for which the maximum sentence is life imprisonment or death; **or**

☐ **(c)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508); **or**

☐ **(d)** any felony if such person has been convicted of two or more offenses described in subparagraphs (a) through (c) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (a) through (c) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; **or**

☐ **(e)** any felony that is not otherwise a crime of violence but involves:
**(i)** a minor victim; **(ii)** the possession of a firearm or destructive device (as defined in 18 U.S.C. § 921); **(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250; ***and***

☐ **(2)** the defendant has previously been convicted of a Federal offense that is described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; ***and***

☐ **(3)** the offense described in paragraph (2) above for which the defendant has been convicted was committed while the defendant was on release pending trial for a Federal, State, or local offense; ***and***

☐ **(4)** a period of not more than five years has elapsed since the date of conviction, or the release of the defendant from imprisonment, for the offense described in paragraph (2) above, whichever is later.

☐ **B. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(3)** *(narcotics, firearm, other offenses)*:  There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses:

☐ **(1)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508);

☐ **(2)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;

☐ **(3)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

☐ **(4)** an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581-1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**

☐ **(5)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

☐ **C. Conclusions Regarding Applicability of Any Presumption Established Above**

☐ The defendant has not introduced sufficient evidence to rebut the presumption above.

**OR**

☐ The defendant has presented evidence sufficient to rebut the presumption, but after considering the presumption and the other factors discussed below, detention is warranted.

### Part III - Analysis and Statement of the Reasons for Detention

After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, the Court concludes that the defendant must be detained pending trial because the Government has proven:

☒ By clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

☒ By a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.

In addition to any findings made on the record at the hearing, the reasons for detention include the following:

☒ Weight of evidence against the defendant is strong
☒ Subject to lengthy period of incarceration if convicted
☒ Prior criminal history
☒ Participation in criminal activity while on probation, parole, or supervision
☐ History of violence or use of weapons
☐ History of alcohol or substance abuse
☒ Lack of stable employment
☐ Lack of stable residence
☐ Lack of financially responsible sureties
☐ Lack of significant community or family ties to this district
☒ Significant family or other ties outside the United States
☐ Lack of legal status in the United States

AO 472  (Rev. 09/16)  Order of Detention Pending Trial

- ☐ Subject to removal or deportation after serving any period of incarceration
- ☒ Prior failure to appear in court as ordered
- ☐ Prior attempt(s) to evade law enforcement
- ☒ Use of alias(es) or false documents
- ☐ Background information unknown or unverified
- ☒ Prior violations of probation, parole, or supervised release

OTHER REASONS OR FURTHER EXPLANATION:
see Attachment A.

Defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  Defendant must be afforded a reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

At the conclusion of the detention hearing on January 21, 2021, the Court ordered Defendant detained pending trial and orally set forth its findings.  This order merely further memorializes such ruling.

**SIGNED this 31st day of January, 2021.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CASE NO. 4:21-MJ-00033 |
| | § | |
| TROY ANTHONY SMOCKS | § | |

**ATTACHMENT "A"**

Defendant Troy Anthony Smocks ("Defendant") was charged by Complaint with a violation of 18 U.S.C. § 875(c)—Threats in Interstate Commerce (Count 1) [Dkt. 1 Sealed]. Count 1 carries a term of imprisonment of not more than five (5) years, a fine not to exceed $250,000, a term of supervised release of at not more than three (3) years, a $100 special assessment. The Government sought to detain Defendant under 18 U.S.C. §§ 3142(f)(1) and 3142(f)(2). On January 21, 2021, the Court held a hearing to determine whether Defendant should be held in custody pending trial in accordance with 18 U.S.C. § 3142(f) [Dkt. 11]. Assistant United States Attorney Tracey Batson appeared on behalf of the Government. James Whalen, retained counsel, appeared on behalf of Defendant.

The Court has considered the testimony and evidence presented at the detention hearing (including the testimony of Special Agent Kendrick Chumak of the Federal Bureau of Investigations ("FBI") Dallas, Texas office and the pretrial services report and its recommendation for detention), in light of all the factors listed in 18 U.S.C. § 3142(g)—including the nature and circumstances of the offense charged, the apparent weight of the evidence against Defendant, Defendant's history and characteristics, and the nature and seriousness of the danger to any person or the community. The Court, having held a pretrial detention hearing pursuant to 18 U.S.C.

§ 3142(f) and determined that no combination of release conditions can reasonably assure public safety and Defendant's appearance, finds that Defendant should be detained pending trial.

## LEGAL STANDARD

The Bail Reform Act, as codified in 18 U.S.C. § 3142, governs the release and detention of criminal defendants awaiting trial. A judicial officer may order a defendant detained pending trial only upon satisfying two prerequisites. First, the officer must hold a hearing pursuant to a circumstance listed in 18 U.S.C. § 3142(f). *United States v. Byrd*, 969 F.2d 106, 10910 (5th Cir. 1992) (per curiam) ("Detention can be ordered, therefore, only in a case that involves one of the six circumstances listed in (f) . . . .") (internal quotation marks omitted).[1] Second, after a hearing, the officer must determine whether the Government has shown by a "preponderance of the evidence that 'no condition or combination of conditions will reasonably assure the appearance of the person,' or by clear and convincing evidence that 'no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community.'" *United States v. Acosta-Leyva*, 751 F. App'x 594, 595 (5th Cir. 2019) (quoting 18 U.S.C. § 3142(e)); *see also United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992) (explaining that, "[f]or pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance, or the safety of others or the community, is sufficient; both are not required"). Upon satisfying both prerequisites, a judicial officer may order a criminal defendant detained pending trial. *See United States v. Okhumale*, 813 F. App'x 936, 938 (5th Cir. 2020) (per curiam) (reaffirming that pretrial detention requires "the presence of one of the circumstances outlined in § 3142(f) *and* a determination under § 3142(e) that the no conditions imposed could either assure

---

[1] At the time *Byrd* was issued, there were only six circumstances listed in section 3142(f), subsections 3142(f)(1)(A)–(D) and 3142(f)(2)(A)–(B). Subsequently, in 2006, the Bail Reform Act was amended to include a seventh circumstance, section 3142(f)(1)(E). *See* Adam Walsh Child Protection and Safety Act of 2006, Pub. L. 109-248, § 216, 120 Stat. 617 (2006).

ATTACHMENT "A" – 2

the appearance of the defendant or the safety of the defendant and community") (emphasis in original) (citing *Byrd*, 969 F.2d at 109-10).

Section 3142(f) provides seven circumstances under which a judicial officer must hold a hearing to determine whether any combination of conditions will reasonably assure the defendant's appearance and the public safety. Under § 3142(f)(1), "upon motion of the attorney for the Government," the judicial officer must hold a hearing in a case involving "a crime of violence." 18 U.S.C. § 3142(f)(1)(A). Smock's charge of threats in interstate commerce, in violation of 18 U.S.C. § 875(c), constitutes a "crime of violence" under 18 U.S.C. § 3142(f)(1)(A).

The term "crime of violence" takes on a specialized meaning in the context of pretrial detention. The term "crime of violence," as used in §§ 3141-3150, is defined as "an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another[.]" *Id.* § 3156(a)(4)(A). An offense under § 875(c), in turn, requires "transmi[ssion] in interstate or foreign commerce [of] any communication containing any threat to kidnap any person or any threat to injure the person of another[.]" *Id.* § 875(c); *see also United States v. Morales*, 272 F.3d 284, 287 (5th Cir. 2001) (discussing the requirements for conviction under § 875(c)). Defendant is charged with making several "threats in interstate commerce," in violation of § 875(c). This Court, along with many others, has previously determined the offense constitutes a "crime of violence" under § 3142(f)(1)(A) for pretrial detention purposes. *See, e.g.*, *United States v. Dunn*, 4:20-cr-00142-SDJ-KPJ [Dkt. 58, Sealed]; *United States v. Choudhry*, 941 F. Supp. 2d 347, 351 (E.D.N.Y. 2013) ("Therefore, communicating a threat in violation of 18 U.S.C. § 875(c) constitutes a 'crime of violence,' warranting detention under the Bail Reform Act.") (citing *United States v. Dillard*, 214 F.3d 88, 97 (2d Cir. 2000)); *United States v. Kaetz*, No. 2:20-CR-1090-1, 2021 WL 37925, at *5 (D.N.J. Jan. 4, 2021) (finding

that communicating threats in interstate commerce in violation of 18 U.S.C. § 875(c) constitutes a crime of violence); *United States v. Santoro*, 359 F. Supp. 3d 122, 128 (D. Me. 2019) (holding that the "communicated threat crime under section 875(c) is a crime of violence"); *United States v. Cooper*, No. 3:19-MJ-04254-1, 2019 WL 4259454, at *3 (M.D. Tenn. Sept. 9, 2019) ("Communicating a threat in violation of 18 U.S.C. § 875(c) constitutes a 'crime of violence' for purposes of the Bail Reform Act.").

Having held a hearing pursuant to § 3142(f), the Court must next determine whether any combination of conditions can reasonably assure Defendant's appearance and the safety of the public. Section 3142(g) sets out the factors a court must consider in making that determination: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the defendant's history and characteristics, including, among other things, his family ties, length of residence in the community, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18U.S.C. § 3141(g); *see also Acosta-Leyva*, 751 F. App'x at 595.

## EVIDENCE PRESENTED

At the detention hearing, the Government offered testimony from FBI Special Agent Kendrick Chumak ("SA Chumak"). The Court found his testimony to be credible. The FBI began investigating Defendant after receiving a series of tips that related to social media posts referencing the attack on the Capitol, which occurred on January 6, 2021, and encouraging "American Patriots" to take up arms to defend our country. The FBI's investigation revealed that Defendant has a lengthy history of impersonating military personnel and federal agents and committing other fraudulent activities.

As set forth *infra*, at the conclusion of the detention hearing, the Court found that Defendant should be detained pending trial based upon the factors in 18 U.S.C. § 3142(g), finding that no condition or combination of conditions would reasonably assure the defendant's appearance and the public safety.  *See* 18 U.S.C. § 3142(f).

*Defendant's History and Characteristics*

Defendant has an extensive criminal history, dating back to 1981 [Dkt. 10 at 5, Sealed]. Defendant has been convicted of a plethora of offenses including theft, forging checks, impersonating federal agents, and fraud, to name a few [Dkt. 10 at 5-9, Sealed].  Plaintiff's previous convictions are as follows:

1. January 7, 1981 – Unlawful Use of a Credit Card, Johnson County, Kansas. Defendant sentenced to four years probation on June 18, 1981; probation revoked on February 21, 1985, and sentenced to two years confinement; paroled on October 8, 1985; parole expired January 27, 1985 [Dkt. 10 at 5, Sealed].

2. November 21, 1981 – Theft of Property Less Than $100, Johnson County, Kansas.  Defendant sentenced to two years probation on July 16, 1982; probation revoked on February 20, 1985, and sentenced to one year confinement [Dkt. 10 at 5, Sealed].

3. January 18, 1982 – Stealing, Kansas City, Missouri.  Defendant sentenced to two years probation on July 19, 1982; probation suspended on January 31, 1983; probation revoked on July 6, 1984, and sentenced to one year confinement [Dkt. 10 at 5, Sealed].

4. August 24, 1982 – Auto Theft, Kansas City, Missouri.  Defendant sentenced to five years probation on September 30, 1982; probation suspended on January 31, 1983; probation revoked on August 31, 1984, and sentenced to three years confinement; paroled on January 31, 1986; parole revoked on May 19, 1986; paroled on March 6, 1987; parole expired May 1, 1987 [Dkt. 10 at 5-6, Sealed].

5. September 28, 1984 – Insufficient Funds Check over $150, Jefferson City, Missouri.  Defendant sentenced to three years confinement on July 24, 1985; paroled on January 3, 1986; parole revoked on May 19, 1986; paroled March 6, 1987; parole expired on May 11, 1987 [Dkt. 10 at 6, Sealed].

6. March 20, 1986 – Larceny under $50, Kansas City, Missouri. Defendant sentenced to one month confinement on November 19, 1986 [Dkt. 10 at 6, Sealed].

7. April 26, 1986 – Attempting to Pass Bad Checks, Jackson County, Missouri. Defendant sentenced to thirty days confinement on May 7, 1986 [Dkt. 10 at 6, Sealed].

8. April 28, 1986 – Count 1: Disturbing the Peace; Count 2: Resisting an Officer; Count 3: Miscellaneous City Violation, Kansas City, Missouri. Defendant sentenced to thirty days confinement on November 19, 1986 [Dkt. 10 at 6-7, Sealed].

9. February 11, 1988 – Attempted Theft by Swindle, St. Paul, Minnesota. Defendant sentenced to one year and fifteen days confinement on August 9, 1988 [Dkt. 10 at 7, Sealed].

10. July 2, 1988 – Offering a Forged Check, Minneapolis, Minnesota. Defendant sentenced to eight and a half months confinement on December 13, 1988 [Dkt. 10 at 7, Sealed].

11. August 22, 1990 – Theft over $500, Minneapolis, Minnesota. Defendant sentenced to three years probation on June 19, 1991 [Dkt. 10 at 7, Sealed].

12. February 8, 1991 – Driving After Revocation, Minneapolis, Minnesota. Defendant sentenced to five years confinement; stayed for one year on December 15, 1991; bench warrant issued for failure to pay fine and new offense on April 1, 1992 [Dkt. 10 at 7, Sealed].

13. August 21, 1991 – Falsely Impersonating a Federal Agent, Minneapolis, Minnesota. Defendant sentenced to thirty months confinement, followed by one year supervised release on March 19, 1993; supervised release commenced on March 29, 1995; motion to revoke filed October 27, 1995; supervised release revoked and sentenced to twelve months confinement on February 23, 1996 [Dkt. 10 at 7, Sealed].

14. January 28, 1993 – Falsely Impersonating a Federal Agent, Minneapolis, Minnesota. Defendant sentenced to thirty months Bureau of Prisons, followed by one year supervised release on March 19, 1993; supervised release commenced on March 29, 1995; motion to revoke filed October 27, 1995; supervised release revoked and sentenced to twelve months confinement on February 23, 1996 [Dkt. 10 at 8, Sealed].

15. August 16, 1995 – Impersonating a Federal Agent, Minneapolis, Minnesota. Defendant sentenced to one year Bureau of Prisons, followed by one year supervised release on February 21, 1996; supervised release to commence on

      May 15, 1997; supervised release revoked, sentenced to one year confinement on April 8, 1998 [Dkt. 10 at 8, Sealed].

16. December 15, 1997 – Stealing; Forgery (13 Counts), Kansas City, Missouri. Defendant sentence to thirty-four years confinement on October 3, 2003 [Dkt. 10 at 8, Sealed].

17. March 6, 2000 – Operating Unlicensed Investigation Company – Dallas, Texas. Defendant sentenced to ninety days confinement on October 1, 2001 [Dkt. 10 at 9, Sealed].

18. March 22, 2005 – Count 1: Production of Fraudulent Identification Documents; Count 2: Bank Fraud, Sherman, Texas. Defendant sentenced to thirty months Bureau of Prison followed by five years supervised release on March 15, 2006; supervised release commenced January 17, 2014; supervised release expired January 17, 2019 [Dkt. 10 at 9, Sealed].

Defendant has repeatedly violated the terms of his probation or parole, has failed to appear for court, and has been revoked on at least two occasions [Dkt. 10 at 5-8]. Moreover, at Hearing, specifics were offered as it relates Defendant's extensive history of impersonating federal law enforcement, SA Chumak testified that in 1991, Defendant showed up to a search warrant in progress wearing a Drug Enforcement Administration ("DEA") t-shirt, carrying handcuffs, and identified himself as law enforcement. Defendant then requested law enforcement's help identifying a purported murder suspect. Law enforcement resources were utilized in an attempt to identify the murder suspect before law enforcement was able to determine Defendant was impersonating a federal agent. SA Chumak stated that in 1993, Defendant then impersonated a Secret Service Agent. Defendant went to a female's residence, told the female she matched the description of an individual they were looking for, and told the female he would have to arrest her. Defendant was carrying a firearm at the time of the instant offense. The female called 911 and Defendant was arrested. Then, in 1995, Defendant identified himself as an FBI agent to a police department and requested help searching for a fugitive. SA Chumak testified that two police officers were actively helping Defendant search for the alleged fugitive when it was determined

Defendant was impersonating a federal officer. In addition to impersonating federal law enforcement, Defendant also has a history of impersonating military personnel. Defendant told the FBI and Pretrial Services that he served in the military in the early 1980s but was discharged before completion of his four years of service. Defendant told SA Chumak that he had been stationed at Fort Sill and Fort Hood, and when asked why the Department of Defense had no record of his service, told SA Chumak that the Department of Defense must have lost his records. SA Chumak testified that Defendant has repeatedly represented himself to be a Colonel in the US Army. SA Chumak stated there are photographs of Defendant at a wedding in 2003 wearing a full military dress uniform complete with medals he did not earn.

Defendant's probation and parole violations, and prior failure to appear, indicate that he is unlikely to follow any pretrial conditions that may be set by this Court. Further, given Defendant's extensive history of impersonating federal law enforcement and military personnel, and repeated instances of the same or similar conduct even after facing criminal penalties previously, the Court is concerned he will be a danger to the public and also has the ability to flee if released pretrial. Defendant has not presented evidence or argument to overcome these concerns.

*Current Charges under 18 U.S.C. § 875(c)*

I. **Defendant's Social Media Posts**

SA Chumak testified that Defendant was first brought to the attention of the FBI through receipt of tips relating to posts made on a Parler, LLC ("Parler") account under the name "ColonelTPerez (Ret) @ Colonel 007." The FBI obtained a warrant and executed it on Parler, obtaining the telephone number, IP address, and email address associated with the "ColonelTPerez" account. The phone number connected to the Parler account was registered to Defendant; the FBI then obtained Defendant's driver's license photo and identified him exiting his

apartment in Dallas, Texas, before arresting him on January 15, 2021.  Defendant informed the FBI in a post-arrest interview that he created the "ColonelTPerez" Parler account in November 2020 and was the only person with access to it.  Defendant's account was deleted from Parler on January 7, 2021, at which time Defendant's account had over 30,000 followers.

Defendant made multiple posts to Parler, prior to his arrest [Dkts. 13-1; 13-2].  At Hearing those relevant to the instant charges and presented for the Court's consideration as to the issue of detention were admitted, the First post states:

> Today, January 6, 2021, We Patriots by the millions, have arrived in Washington, D.C., carrying banners of support for the greatest President the world has ever known.
>
> Bit [sic] if We must…
>
> Many of Us will return on January 19, 2021, carrying Our weapons, in support of Our nation's resolve, towhich [sic] the world will never forget!!!
>
> We will come in numbers that no standing army or police agency can match.  However, the police are NOT Our enemy, unless they choose to be!
>
> All who will not stand with the American Patriots… or who cannot stand with Us.. then, that would be a good time for YOU to take a few vacation days.
>
> The American Patriot

[Dkt. 13-1 (punctuation and capitalization in original)].  The FBI was able to confirm through flight records, and Defendant's own admission, that he was in Washington, D.C. at the time of the attack on the Capitol Building.  During his post-arrest interview, Defendant made multiple statements to SA Chumak related to the former President and the attack on the Capitol.  Defendant did not contest that the social media account was his, or that he wrote the posts offered at Hearing.  Defendant also did not contest that the posts were public.  Defendant further told SA Chumak that, if the former President gave the order to "rise up," all Americans should, that Defendant would follow an illegal order given by the President so long as it was not immoral, and that he supported

the takeover of the Capitol Building. Moreover, Defendant told SA Chumak that he believed the United States was at war with China. Defendant informed SA Chumak that he had traveled to Washington, D.C. at the invitation of the President, to listen to him speak at a rally, and to exercise his First Amendment rights. Defendant stated that he marched to the Capitol Building with the individuals who stormed the building. SA Chumak stated that the FBI has been unable to determine whether Defendant ever entered the Capitol Building. The Post, made on January 6, 2021 at the time of the Capitol riots, directly suggests that others join Defendant in returning to Washington D.C. and taking up arms at the upcoming Presidential Inauguration.

Following the attack on the Capitol Building on January 6, 2021, Defendant returned to Texas on January 7, 2021. Defendant posted again on Parler, referencing the march on the Capitol Building and once again calling his fellow "American Patriots" to arms. The Second post states:

> Today Eric Trump said that he would physically fight with the Patriots to save Our country. Today Representative Mo Brooks, asked the Patriots to pledge Our live[s] and wealth to fight for Our country. And today President Trump told Us to "fight like hell." He said that Our cause was a matter of national security, and that these people behind the massive fraud must be arrested and brought to justice. And that task, falls on the shoulders of We The People…. the American Patriots.
>
> So over the next 24 hours, I would say, lets [sic] get our personal affairs in order. Prepare Our weapons, and then go get'em. Lets [sic] hunt these cowards down like the Traitors that each of them are. This includes, RINOS, Dems, and Tech Execs. We now have the green light. [All] who resist Us, are enemies of Our Constitution, and must be treated as such.
>
> Today, the cowards ran as We took the Capital. They have it back now, only because We left. It wasn't the building that We wanted… it was them!

[Dkt. 13-2 (punctuation and capitalization in original)].[2] In his posts, Defendant directly suggested that other patriots like himself should take up arms and expressed animus towards, among others,

---

[2] The entire Parler website has since been taken down. Elizabeth Culliford & Jeffrey Dastin, *Exclusive: Parler CEO Says Social Media App, Favored by Trump Supporters, May Not Return*, REUTERS (Jan. 13, 2021), https://www.reuters.com/article/us-usa-trump-parler-exclusive/exclusive-parler-ceo-says-social-media-app-favored-by-trump-supporters-may-not-return-idUSKBN29I2Z7?utm_medium=Social&utm _source=twitter.

"republicans in name only" and democrats.  Testimony at Hearing revealed that these posts were reviewed by many of Defendant's 30,000 social media followers.  Defendant also had a YouTube Channel with a video from July 2020, titled "These Armed Protestors are Bitch Babies."  In this video, Defendant is dressed in military battle dress uniform, encouraging veterans to take up arms and protest.  Based upon the inciteful content of his posts at a time of political unrest, and Defendant's admission to writing them and intention to act if called upon by fellow patriots, the Court finds that Defendant presents a danger to the community and no combination of conditions would reasonably assure the safety of the community.

**II.     Defendant's Arrest and Execution of Search Warrant**

The FBI arrested Defendant on January 15, 2021, outside his Preston Heights Apartment in Dallas, Texas, and executed a search warrant on his apartment.  In his apartment, the FBI found: a fraudulent Federal Aviation Administration ("FAA") pilot's license; a fraudulent NetJets IP, LLC ("NetJets") ID; a free standing computer; a laptop; a tablet; SD cards; a printing and laminating machine; a revolver; two knives; a stun gun; a bag full of fraudulent documents; and a box of blank common access cards.[3]  SA Chumak testified that, upon execution of the search warrant, the FBI also obtained a copy of Defendant's lease application with the Preston Heights Apartment.  On his application Defendant listed that he was a Colonel in the military and had retired in 2014 after thirty years of service, Defendant also indicated that he was in the special forces.  Defendant listed NetJets as his employer on his application, indicating a salary between $65,000 and $69,000 a year.

Defendant admitted in his post-arrest interview that he had held himself out as a pilot and employee of NetJets but that he had made both IDs.  The FAA also had no record of Defendant

---

[3] SA Chumak testified that common access cards are used by the government and military to create identification cards.

holding a pilot's license.  Moreover, Defendant told SA Chumak that he owned a biohazard clean-up company by the name of 74 Delta and supported himself by writing books.[4]  SA Chumak was never able to confirm Defendant's involvement with 74 Delta.

### III.     Defendant's Travel and International Connections

Prior to his arrest, Defendant had recently traveled internationally.  Defendant traveled to the Dominican Republic in mid-December and returned on January 4, 2021.  Defendant informed SA Chumak that he has friends in the Dominican Republic, a friend in either Hungary or Turkey, and that his wife is in the Philippines.  Defendant has also wired money to these individuals on multiple occasions.  Defendant indicated he traveled internationally frequently, and along with the Dominican Republic, has also traveled to Japan and Korea.

After his return from the Dominican Republic, Defendant flew to Washington, D.C. on January 5, 2021, and returned to Texas on January 7, 2021.  Defendant had another flight to the Dominican Republic scheduled for January 15, 2021, with a return date of January 24, 2021.  Defendant canceled his flight the night before he was scheduled to depart.  Defendant originally told SA Chumak that he had canceled the trip because he was tired and did not want to travel anymore, but later told agents that he canceled the trip because his niece and nephew were coming into town and needed a place to stay.  Notably, Defendant's passport was recovered during the search of his apartment and remains in FBI custody.  Defendant's recent international travel, as well as his ties to those abroad, namely his wife, gives the Court concern that Defendant would be a flight risk.

---

[4] SA Chumak testified that Defendant has authored a single book, which contains dating advice for women.

ATTACHMENT "A" – 12

In summary, SA Chumak testified that given the content of Defendant's posts during a time of unrest, Defendant's extraordinary history and pattern of impersonation of federal law enforcement and military personnel, and ability to create fraudulent documents, and likelihood that he would continue to do so if released, he is a threat to the community and a flight risk.[5]

## CONCLUSION

Based upon the nature of the offense with which Defendant is charged, the evidence presented to the Court including the witness testimony and exhibits admitted, the pretrial services report that recommends detention [Dkt. 10, Sealed], and the Court's consideration of all the relevant factors, the Court finds Defendant should be detained pending trial. Defendant does not contest that the posts set forth in the complaint are his or that he authorized the posts. Defendant's posts were public and went out to thousands of followers urging violence. SA Chumak testified the pending Complaint, nor the evidence at Hearing, does not include all of the Defendant's posts. The nature and circumstances of the charges and the length of the potential sentence weigh in favor of detention. Defendant's history and characteristics enhance the concern about both Defendant's danger and risk of flight. Defendant has a long history of impersonating law enforcement and military personnel and creating and using fraudulent or false IDs and other documents. He also has repeated instances of probation and supervised release revocation and utter failure to comply with conditions of release; the Court understands this to be in excess of ten past instances. Defendant has previously assaulted an officer, resisted arrest, or both, reflecting an increased risk to others should Defendant fail to comply with any conditions if released. Defendant has demonstrated a disregard for law enforcement and public safety by repeatedly

---

[5] Although Defendant proffered that his niece could serve as a third-party custodian, Defendant's niece was not present at Hearing to testify as to why she is a suitable third party custodian, nor was pretrial service provided Defendant's nieces information and able to conduct an investigation into her suitability as a third-party custodian.

ATTACHMENT "A" – 13

violating parole conditions.  Defendant has not presented evidence or argument to overcome these concerns.  To reiterate, Defendant has been charged with making threats on the lives of others—calls to arms towards certain groups of persons.  The Court finds no combination of conditions of release pending trial would reasonably assure public safety or ensure that Defendant is not a risk of flight.

ATTACHMENT "A" – 14